IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA

      v.                                      Case No. 19-CR-84-jdp

URSULA WING,

      Defendant.

---

GOVERNMENT'S SENTENCING MEMORANDUM

---

The United States of America, by its attorneys Scott C. Blader, United States Attorney for the Western District of Wisconsin, and Daniel J. Graber, Assistant United States Attorney, hereby submits this memorandum to aid the Court in the sentencing of the defendant, which is currently set for July 10, 2020.

A.      <u>Government's Sentencing Position</u>

The advisory guidelines computation, as set forth in the revised PSR, has the total offense level at 12 and a criminal history category of I.  This results in an advisory guidelines imprisonment range of 10 to 16 months.  (R. 38, Revised PSR ¶ 82). The government believes a sentence of probation for a term of 1 year, and a fine in the amount of $55,000, due and payable immediately, is reasonable and no greater than necessary to hold the defendant accountable for her crime, protect the public, and

achieve parity with the sentences of similarly situated offenders. The government recommends this sentence based upon the following § 3553(a) factors:

1. <u>Need to Provide Just Punishment for the Offense and Promote Respect For The Law.</u>

   a. <u>Nature of The Offense</u>

Wing may disagree with the laws prohibiting self-managed abortions using Mifepristone and Misoprostol, but the fact remains that she was breaking the law in a variety of ways for an extended period of time. This was not a one-time lapse of judgement, or conduct resulting from mistake, accident or negligence. This was knowing and intentional. And it was repeated over two years from June 2016 to June 2018. Also, it was done for a profit – a 100% markup over cost.

Wing's criminal conduct was multi-faceted and included:

   1. Selling Mifepristone and Misoprostol without a license to prescribe or distribute these prescription medications. Wing was not a certified healthcare professional authorized to distribute and/or supervise the use of these drugs. (R. 38, Revised PSR ¶ 8).

   2. Selling Mifepristone and Misoprostol without a prescription from the customer. (R. 38, Revised PSR ¶ 8). These drugs are used for inducing a medical abortion within the first 70 days of pregnancy. (R. 38, Revised PSR ¶ 13). Wing bypassed this requirement completely. And in so doing, it allowed her customers to administer the drugs at home, which violated the FDA Risk and Evaluation Mitigation Strategy requirement that Mifepristone may only be dispensed in clinics, medical

offices, and hospitals by, or under the supervision of, a certified healthcare provider, and the healthcare provider must obtain a signed Patient Agreement Form before dispensing Mifepristone. (R. 38, Revised PSR ¶ 13).

It also allowed one of her clients, Jeff Smith, to buy these medications from Wing where he used them on his girlfriend in an attempt to have her abort her 120-day pregnancy. And that conduct has resulted in Smith being charged with attempted first-degree intentional homicide of an unborn child (Case No. 2018CF132). (R. 38, Revised PSR ¶¶ 15-19).

        3.      Selling a foreign-sourced version of Mifepristone and Misoprostol that was not approved by the FDA for use in the United States. Wing obtained these pills from an offshore pharmacy in India. (R. 38, Revised PSR ¶ 24, 27). The shipments of the pills from India to New York were falsely labeled on US Customs forms as "personal supply medication." (R. 38, Revised PSR ¶ 27).

        4.      Using the U.S. mails to distribute the pills to clients in the United States without declaring the content of the mailings as a poisonous drug or medicine, as required under 18 U.S.C. § 1716. (R. 38, Revised PSR ¶ 29).

        5.      Using the U.S. mails to distribute the pills to clients outside of the United States and falsely declaring the contents of the mailings on a US Customs Form as "jewelry." (R. 38, Revised PSR ¶ 31).

b.      Sophisticated Means To Conceal Her Criminal Conduct

Wing knew what she was doing violated the law. Yet, she sold the pills anyway and took a number of steps to conceal her conduct from authorities. That conduct included:

1.      Wing sold these pills through her online website called the Macrobiotic Stoner, which was her blog where she talked about a variety or health and nutrition topics, including medically induced abortions. (R. 38, Revised PSR ¶¶ 17, 20-21). Wing had a secret page on her website called "My Secret Bodega." On her secret page, she offered Mifepristone and Misoprostol pills for sale individually or in packets. *Id.* She had pictures of the pill packets and the various dosage quantities that were available at different price points. (Exhibit 1).

2.      Wing created a fake business called Fatima's Bead Basket as a cover entity to make it look like she was shipping jewelry products to her customers. (R. 38, Revised PSR ¶ 21). She listed "Fatima's Bead Basket" as the shipper on the envelope going to the customer. She also inserted a necklace or other item of jewelry in the shipping envelope to serve as the cover piece of merchandise being mailed to the customer. Wing packaged the Mifepristone and Misoprostol pills in a smaller packet that was in a hidden panel and taped to the inside of the shipping envelope. On her secret page, she told her customers why she needed to hide the pills, stating that she will use a cover name on the shipping envelope (Fatima's Bead Basket), that she will include a piece of jewelry in the envelope, and that the pills will be hidden and taped

4

inside the envelope. She wrote, "in case your mail passes through the hands of nosey people." (R. 38, Revised PSR ¶ 21).

        3.    Wing disguised the nature of the item being purchased by listing on the invoice jewelry product names, each of which had a code to indicate the actual item being ordered. (R. 38, Revised PSR ¶ 22). These jewelry product names included: "Gold electroplate twisted multi-rope collar necklace," which stood for a "MTP Kit of 1 Mifepristone 200 mg pill and 4 Misoprostol 200 mg pills." (Exhibit 2).

        4.    Wing initially had her clients use PayPal to pay for the pills. However in April 2018, PayPal cut her off for violating their policies regarding the sale of illegal products. Wing then created a fake online jewelry business called Morocco International and a fake merchant processing portal for this entity for use as a cover for selling the Mifepristone and Misoprostol pills on her secret Bodega web page. By creating this fake merchant processing portal, Wing allowed her Macrobiotic Stoner clients to pay for the Mifepristone and Misoprostol pills using their credit cards, with the sales showing up on the merchant account as necklaces, and not Mifepristone or Misoprostol. (Exhibit 2).

        5.    Wing mislabeled the packages of Mifepristone and Misoprostol pills that she sent by US Mail to locations outside the United States by falsely declaring on the customs forms that the item was "jewelry," and not Mifepristone and Misoprostol pills. (R. 38, Revised PSR ¶¶ 27, 31).

      c.      <u>No Respect For The Law</u>

Wing has no respect for the law, in fact, she has utter contempt for the law and the criminal justice system. This point is conclusively established in two different admissions by Wing.

      1.      In an interview with *Mother Jones* published in April 2019, Wing admitted she started selling Mifepristone and Misoprostol pills illegally in May 2016 and she has served over 2000 clients. (Exhibit 3, p. 1). She admitted she did it for the money and she applied a 100% profit markup to Mifepristone and Misoprostol pills that she obtained from an offshore pharmacy in India. (Exhibit 3, p. 2). She admitted that she took steps to hide her illegal conduct by creating the secret Bodega web page. She also admitted that what started out as a money-making business venture, "changed into something political." *Id.* Wing added she was glad to go on quietly undermining the law, providing pills to customers who came across her website. (Exhibit 3, p. 3). Wing noted that she was speaking out now saying, "I want some copycats. There's not enough people doing this." *Id.*

That interview took place ten months after a June 21, 2018 federal search warrant was executed at Wing's home where agents found packages from India addressed to Wing that contained bulk packets of Mifepristone and Misoprostol pills. (R. 38, Revised PSR ¶¶ 28-29). At that time, the agents told Wing she was engaging in illegal conduct and she needed to stop. Instead, on July 5, 2018, Wing tried to pick up more mailings with pills from India. (R. 38, Revised PSR ¶ 29).

6

2. In her February 11, 2019 blog on the Macrobiotic Stoner website, Wing blogged to her readers about the June 21, 2018 search warrant executed at her home. (Exhibit 4). Wing methodically explained what happened during the search, noting that one agent collected the outgoing mail parcels in Wing's favorite tote and slung the tote over his arm, "while wearing a triumphant look on his face, as if smug in the thought that half a dozen unwanted babies would be born because of the commandeered cargo hanging over his shoulder." (Exhibit 4, p. 3). Wing added, "They violated my apartment. They took my computer which was my voice and my factory." (Exhibit 4, p. 4). After the agents left, Wing asked herself, "who are these assholes I wondered, when they weren't busting into the apartments of single moms and scaring kids with their superfluous firearms." *Id.* Wing then ranted:

> This is who is running our government, holding their summits where they blow hot air and drink overpriced bottled water bought with our taxes. A bunch of aging, sexually repressed white men, deciding who should do what and how, and who will serve them dinner and suck their dicks at the end of the day. I paid taxes on everything I sold to the desperate, late-night visitors of my website. I pay taxes in what I earn from my day job. And it's no small sum. There mutherfuckers work for me. And I think they're doing a lousy fucking job. . . . So much fuss, over a few pills. Yes I have broken the law. . . . So fuck'em. I'm weary of protest. I believe in action and civil disobedience. Whether you consider abortion a constitutional right or not, they simply do not have the infrastructure to vet our ability to acquire these medications. (Exhibit 4, pp. 5-6).

What is clear from this blog posting is that Wing has no remorse for her conduct and no respect for the law. She ends her post advocating for the continued purchase of Mifepristone and Misoprostol from offshore pharmacies, stating, "if you have the

means you can order extras to either gift or sell to other women in need." (Exhibit 4, p. 6).

        d.        <u>Provide Appropriate Punishment</u>

Imposition of a fine at the high-end of the advisory guidelines range of $5,500 to $55,000 provides adequate punishment for Wing's criminal conduct because it focuses on the motive that led to her actions – money. Wing admits in the *Mother Jones* article she started this venture to make money and pay off bills. (Exhibit 3, p. 2). She also admits in the article she was not doing it for free, but for a 100% profit markup. (Exhibit 3, P. 2). Based on her recovered PayPal records and bank records, that amounted to $61,753. (R. 38, Revised PSR ¶ 32).

Wing is forfeiting to the government the cost of the drugs she sold ($61,753), which is appropriate because she never should have been able to obtain and sell these pills in the first place. But, that's not real punishment to pay back that which she should not have had in the first place.

The punishment is in the fine. It must be enough to sting, but not so much as to cause financial ruin. Here, Wing knew the government was coming after her money. That's why she underreported her net worth in her initial financial disclosures. In the initial PSR, she reported total assets of $508,095, total liabilities of $593,673 and a negative net worth of $84,768. (R. 24, PSR ¶ 77). This caused the PSR writer to recommend against the imposition of a fine because Wing did not have sufficient funds without impairing her ability to support herself and her child. (R. 24, PSR ¶ 80).

Miraculously, after the government objected to this finding and pointed out that Wing had not included the value of her inherited rental property as an asset, Wing revised her net worth. Now, in the revised PSR, she reports total assets of $2,407,507, total liabilities of $593,674 and a positive net worth of $1,813,832. (R. 38, Revised PSR ¶ 77). Instantly, she is now a millionaire and has the means to pay a substantial fine. (R. 38, Revised PSR ¶ 80).

Moreover, her efforts to downplay this large net worth by arguing that her monthly income amount is zero, is not persuasive. (R. 38, Revised PSR ¶ 78). She currently has $503,904 sitting in six different bank accounts. (R. 38, Revised PSR ¶ 77). She also can sell her share of the $1,900,000 rental property, or obtain a loan. Either way, she has the means to pay a $55,000 fine, and the fact that she tried to hide those means from the Court in the initial PSR financial disclosure shows her guilty knowledge. More importantly, it serves as an aggravating factor that should cut in favor of a fine at the high-end of the advisory guidelines range, not the low end.

B.  Government's Response to Wing's Sentencing Memorandum

In her sentencing memorandum, Wing makes a number of arguments in support of her sentencing recommendation that she receive a one-year term of probation and a fine at the low end of the advisory guidelines ($5,500). (R. 35). The government responds as follows:

1. <u>Not a Social Justice Warrior</u>

Wing contends she is not a social justice warrior for the underground movement of women obtaining Misoprostol and Mifepristone to do self-induced medical abortions. She argues her sole purpose was to make money and pay bills. (R. 35, p. 2).

The government agrees with Wing that her motivation for starting this business venture was money, at a 100% profit markup. However, as she explained in the *Mother Jones* article, it became political, and she became an activist who advocated for others to join her to break the law. (Exhibit 3, p. 3). She repeated that charge in her Macrobiotic Stoner blog post, so it was not some out-of-context statement made in off-hand moment. (Exhibit 4, p. 6). The government's point is that her quest to have others join her in breaking the law shows a lack of respect for the law and the need for punishment – and that is not accomplished with a $5,500 fine – which is a slap on the hand for someone with a net worth of $1,813,832.

2. <u>Chastened and Hastened by Raid and Indictment</u>

Wing argues the June 2018 raid by federal agents on her home and subsequent indictment has "chastened and hastened" her out of the online abortion medication business. She now realizes that she put her liberty and financial resources at risk with such brazen conduct. (R. 35, p. 2).

Again, the government agrees with Wing that it was the government that put her out of business – not Wing herself. She is not doing it anymore because the government executed a search warrant and seized the instrumentalities she used to operate this

business venture. Moreover, the government indicted her and had her put on pretrial conditions of release that prohibit her from engaging in this illegal conduct.

However, as to the "chastened and hastened" observation, the government disagrees and would point to her statements in the *Mother Jones* article and Macrobiotic Stoner blog post where she advocates for others to join her in breaking the law. As she stated in the *Mother Jones* interview, she made that request against her attorney's advice. (Exhibit 3, p. 3). That shows the opposite of chastisement and remorse. It shows zealousness and a commitment to one's convictions, no matter the legal consequences. A fine at the low end of the guidelines does not adequately address such behavior or mindset.

    3.    <u>Forty-Two Year Old Single Parent</u>

Wing also makes a mitigation argument pointing out that she is a forty-two year old single parent of an eight-year daughter that she must provide for, without any help from the father. (R. 35, p. 3). She also submits nine letters in support, all of which state she is a good mom and it would be devastating to separate her from her daughter. (R. 33). All of the letters plead for sentencing leniency to allow Wing to take care of her child, and manage the rental property she took over managing in 2017, when her dad died. *Id.* Wing acknowledges that while her recent inheritance of the rental property boosts her financial picture, she still has a negative income cash flow because the economy is at a standstill during the pandemic. (R. 35, p. 3).

Wing's financial mitigation argument using her daughter as a shield is not persuasive. First, there is no "parent discount" in sentencing. Parents don't get to use

11

their kids as shields from punishment. Second, the considerations being raised by Wing right now should have been the guardrails that kept her on the right side of the law back in 2016, 2017 and 2018 – but they did not. Wing chose to intentionally and knowingly break the law. That decision has consequences that will impact her daughter – but that's Wing's fault, not the Court's fault in imposing punishment on this defendant.

### 4. Mitigation of Medical Risk and Need

In a second filing, Wing also argues her conduct did not cause a danger to her clients because: (1) abortion pills are safe; and (2) home use of abortion pills is safe and effective. (R. 32). Wing attaches letters from abortion providers and social workers who claim the home use of Mifepristone and Misoprostol pills is required and justified because many women have multiple barriers to access to clinical services to a medical abortion. (R. 32, pp. 13-18).

In her second pleading, Wing cites to a plethora of studies looking at how many home-based medical abortions take place using Mifepristone and Misoprostol pills, but she fails to cite to any peer-reviewed studies backing up her claims that Mifepristone and Misoprostol pills are safe and can be administered safely outside a clinical setting.

This lack of proof dooms her medical mitigation argument and undercuts her position that the FDA is wrong in its assessment that: (1) Mifepristone is a prescription drug used for a medical abortion within the first 70 days of pregnancy, but is not available to the public through pharmacies; (2) its distribution is restricted to specially qualified, licensed physicians, and the administration of Mifepristone is subject to an

FDA Risk and Evaluation Mitigation Strategy (REMS); (3) Mifepristone may only be dispensed in clinics, medical offices, and hospitals by, or under the supervision of, a certified healthcare provider; and (4) the healthcare provider must obtain a signed Patient Agreement Form before dispensing Mifepristone.

Wing's medical mitigation argument also fails because it does not address the loophole she creates by abolishing the prescription requirement -- which allows people like Jeff Smith to obtain the Mifepristone and Misoprostol pills and use them to make his girlfriend abort her 120-day pregnancy. Wing sold those pills to Jeff Smith on two occasions. (R. 38, Revised PSR ¶¶ 15-19). Yet, Wing fails to address this unpleasant fact in her request for leniency, other than to say Smith is "uninformed" because his plan, as executed, never would have succeeded, and it's "disturbing" that men could do this to women who don't want an abortion. (R. 41, p. 3).

Finally, Wing's medical mitigation argument fails because it does not address why legal means cannot be utilized to combat Wing's barrier argument instead of illegal means. The U.S. Supreme Court's ruling last month on this issue undercuts Wing's position and shows there are legal ways to address the barrier argument. On June 29, 2020, in *June Medical Services LLC v. Russo,* 591 U.S. --- (2020), the Supreme Court ruled, 5 to 4, that a Louisiana law violated the Constitution when it required doctors performing abortions to have admitting privileges at nearby hospitals. Justice Breyer wrote that the Louisiana law would severely restrict abortion as a practical matter. Justice Breyer concluded that the law posed a "substantial obstacle" to women seeking abortions and

placed an "undue burden" on their constitutional rights, drawing on tests established in the Court's 1992 ruling in *Planned Parenthood v. Casey*, 505 U.S. 833 (1992).

The point being, Wing cannot have it both ways – if the barriers are being addressed legally (which the *Russo* decision shows) – then Wing's justification for engaging in illegal conduct evaporates, as does her reason for sentencing mitigation.

5.  <u>Wing's Written Allocution</u>

In her written allocution to the Court, Wing double-downs on her position that she was justified in her criminal conduct as evidenced by all the emails of support she received over the years from her customers, and the burden she shouldered by always being "on-call" for her clients (just like her gynecologist is for her pregnant patients). (R. 41, pp. 1-2).

This misguided rationalization by Wing says it all. The fact is Wing is not a license medical professional authorized to dispense or monitor medical abortions using Mifepristone and Misoprostol. She has neither the education, licensing, training, nor experience to engage in this type of activity. There are reasons the FDA implemented the procedures it did with these medications. And if Wing disagrees with those, she should challenge them legally, just like the plaintiffs in *Russo* made their legal challenges.

However, Wing likes being told she is important, and she is doing "God's work," so its okay to go the illegal route instead. (R. 41, pp. 1-2) (Exhibit 3, p. 2) (Exhibit 4, p. 5). But, it's not okay, and it's not legal. Wing knew that. In the end, Wing did a balancing of the costs and benefits, and she decided the risks were low and the benefits

14

were high for engaging in this illegal conduct. So, she did it. Now she has to face the consequences of that decision. There's nothing "heavy-handed" about that fact, it's simply facing the other half of the balancing analysis that she started in May 2016.

## CONCLUSION

Based on the above, the government asks this Court to sentence the defendant to a one-year term of probation and a fine of $55,000, due and payable immediately.

Dated: 7-8-20

Respectfully submitted,

SCOTT C. BLADER
United States Attorney

By: /s/
DANIEL J. GRABER
Assistant United States Attorney